IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-72-RJ

MARSHA HUGHES,

        Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security,*

        Defendant.

O R D E R

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-17, -21]. Claimant Marsha Hughes ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for further briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on March 19, 2022, alleging disability beginning September 15, 2021. (R. 37, 219–22). The claim was denied initially and upon reconsideration. (R. 97–124). A hearing before an Administrative Law Judge ("ALJ") was held on September 20, 2023, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 59–96). On January 31, 2024, the ALJ issued a decision denying Claimant's request for benefits, (R. 34–58), and the Appeals Council denied Claimant's

request for review, (R. 21–26). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date of September 15, 2021. (R. 39). Next, the ALJ determined Claimant had severe impairments of inflammatory arthritis/rheumatoid arthritis, degenerative disc disease, spondylosis, radiculopathy, migraine headache, and obesity. (R. 39–43).

3

The ALJ also found several of Claimant's diagnoses were non-severe impairments within the meaning of the statute. (R. 39–40). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in interacting with others; understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 40–41). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 43–44).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[1] with the following limitations:

> occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds; sit, stand, walk six hours each in an eight-hour workday; frequently climb, balance, as that term is defined in the Dictionary of Occupational Titles, stoop, kneel, crouch, crawl; frequent overhead reaching; occasional handling; frequent fingering; and occasional exposure to hazards.

(R. 44–52). In making this assessment, the ALJ found Claimant's statements about her limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 46). At step four, the ALJ concluded Claimant was unable to perform her past relevant work; nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined jobs that exist in significant numbers in the national economy that she could perform. (R. 52–53).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

## V. DISCUSSION

Claimant asserts the ALJ erred by failing to account for the vocationally limiting effects of her migraine headaches in the RFC determination. Pl.'s Br. [DE-17] at 5–12. The Commissioner contends that the ALJ properly evaluated the evidence and that substantial evidence supports the ALJ's RFC. Def.'s Br. [DE-21] at 4–14.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory

5

evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

The ALJ found that Claimant's migraine headaches were a severe impairment and expressly discussed her administrative hearing testimony and treatment for migraines in the RFC analysis. (R. 39, 46, 49). The ALJ specifically recounted Claimant's testimony that she has migraines about ten times a month; she was most recently started on Ubrelvy and Botox injections and that combination, along with Topamax and Fioricet, which she had been on for years, has been helping to reduce the migraines from 20 a month; when she has a migraine, they last 6 to 9 hours and sometimes longer; during the time when she has a migraine she functions when she has to, because she has three kids and has no other option, but if she is home alone, she lies in bed in a dark, quiet room; the migraines are typically felt the base of her skull and sometimes on the side; her migraines are occasionally accompanied by nausea and an aura; and they are worse around her menstrual cycle. (R. 46).

The ALJ also discussed Claimant's treatment records. A May 26, 2020 treatment note indicated Claimant had "a longstanding history of migraines that were first diagnosed when she was a teenager" for which she was taking Topamax 100 daily and Fioricet for breakthrough pain, and she reported that she did not miss school, work, or activities due to her migraines. (R. 49, 519). At that time, however, she felt her migraines were uncontrolled and that her medications had not been helping, so her Topamax was increased to twice daily, (R. 519, 522), and in November 2021, she reported her migraines were controlled by her medications, (R. 49, 643). In September 2022, Claimant reported her migraines were again uncontrolled and she was referred to neurology. (R. 933–37). At a January 2023 neurology appointment for her migraines, Claimant reported they had been changing over the prior six months by increasing in frequency to an average

6

of 15 to 20 migraine days a month, sometimes lasting 12 to 24 hours, radiating posteriorly, and involving severe photophobia and phonophobia, and her medication was changed to Emgality with Ubrelvy as needed. (R. 49, 910, 963, 968). In May 2023, she reported some improvement with her migraines decreasing to 10 to 15 a month after three rounds of Emgality injections and that Ubrelvy worked for an hour or two and she felt Fioricet was more effective. (R. 49, 1095). A brain MRI was ordered, switching to Botox was discussed, and Claimant was advised she could repeat Ubrelvy in two hours if needed. (R. 1101). It was also noted that Claimant is a former LPN but that she was not practicing anymore due to her arthritis. (R. 1096). Claimant received her first round of Botox injections on May 16, 2023, and her brain MRI was normal with no findings to explain her headaches. (R. 49, 1103, 1113). Claimant saw other providers in June related to her arthritis and hypertension, (R. 1114–21, 1127–32), but there are no further neurology records related to her migraines. At the September 2023 administrative hearing, Claimant testified that her medications "seemed to be at least helping" in reducing her migraine frequency. (R. 49, 84).

The ALJ limited Claimant to only occasional exposure to hazards on account of her migraines and other conditions but did not impose limitations for time off task or absenteeism, which Claimant asserts would have been disabling based on the VE's testimony that missing more than one day a month would preclude employment. While Claimant contends this was error, the court can trace the ALJ's reasoning for not imposing additional limitations or finding her migraines disabling. The ALJ thoroughly discussed Claimant's testimony and medical records related to migraines, including Claimant's report that she did not miss school, work, or activities due to migraines, even when her migraines were uncontrolled, and that she functioned when she had to despite her migraines. (R. 46, 49, 85, 519, 641, 933). This distinguishes the present case from *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) where the

7

claimant "told her physicians the severity of her headaches had lessened with treatment, [but] the record d[id] not establish whether her headaches nevertheless remained severe enough to cause her to be absent from work when they occurred." Furthermore, where the ALJ fully discussed all the material evidence and the court can trace the ALJ's reasoning, Claimant's disagreement with how the ALJ weighed the evidence is an insufficient basis for remand. *See Lucas v. Kijakazi*, No. 7:22-CV-00175-RN, 2023 WL 4063799, at *6 (E.D.N.C. May 5, 2023) (finding no error where ALJ considered evidence related to Claimant's migraines without making specific findings about their duration and frequency). The court also notes that Claimant's migraines were diagnosed as "not intractable," i.e., manageable or responsive to treatment, *Greene v. Kijakazi*, No. 3:22-CV-174-MOC, 2023 WL 307460, at *6 (W.D.N.C. Jan. 18, 2023), they were typically without aura or nausea, and the medical records and Claimant's hearing testimony indicate she did not seek further medication changes after she started Botox injections coupled with Topamax and Fioricet, (R. 46, 86, 522, 578, 643, 937, 1093, 1113), which implies her medications were working well.

Finally, the court disagrees that the ALJ improperly relied on a lack of supporting objective evidence based on the notation that an MRI showed no findings to explain Claimant's headaches. (R. 49). Claimant's neurologist referred her for an MRI to determine if there was an undiagnosed condition causing her migraines, and the MRI revealed none, which the ALJ appropriately recounted as part of Claimant's medical history related to migraines. (R. 49, 1101, 1113). The ALJ noted evidence, both supportive and unsupportive of disability, and there is no indication of impermissible cherry-picking or improper reliance on a lack of objective evidence. Accordingly, because the ALJ applied the correct legal standards and the decision is supported by substantial evidence, the decision of the Commissioner is affirmed.

8

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is affirmed.

So ordered, this the **23** day of March, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

9